HONORABLE CHRISTOPHER M. ALSTON

HEARING DATE: WEDNESDAY, NOVEMBER 9, 2016
HEARING TIME: 9:30 A.M.
LOCATION: SEATTLE, COURTROOM 7206
RESPONSE DATE: AT TIME OF HEARING

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In re

DOOR TO DOOR STORAGE, INC.
20425 72ND AVE. S.
KENT, WA 98032
Tax ID 91-1698980,

        Debtor.

No. 16-15618

DECLARATION OF TRACEY F. KELLY IN SUPPORT OF DEBTOR'S EMERGENCY FIRST DAY MOTIONS

TRACEY F. KELLY declares as follows:

1. I am the President of Door to Door Storage, Inc. I have personal knowledge of the facts set forth herein. I make this declaration in support of the Debtor's first day motions (the "Emergency Motions"):

    a. Emergency Motion For Interim Order:
       (1) Authorizing Use of Cash Collateral And Granting Adequate Protection Therefor Pursuant To Sections 361 and 363 of The Bankruptcy Code,
       (2) Approving Post-Petition Loan Facility And
       (3) Setting A Final Hearing

    b. Emergency Motion For Order Authorizing Debtor To Continue Use of Existing Cash Management System and Prepetition Business Banking Accounts and Checks;

DECLARATION OF TRACEY F. KELLY IN SUPPORT OF
DEBTOR'S EMERGENCY FIRST DAY MOTIONS – Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2237 20161 aj19590381
Case 16-15618-CMA    Doc 5    Filed 11/07/16    Ent. 11/07/16 13:51:29    Pg. 1 of 6

  c. Emergency Motion For Authority To Pay Prepetition Payroll and Commissions, Employee Benefits, And Related Expenses;

  d. Emergency Motion For Order Approving Adequate Assurance to Utilities;

  e. Emergency Motion For Case Management Order; and

  f. Debtor's Application For Order Authorizing The Employment And Retention Of Claims Noticing Agent Nunc Pro Tunc To The Petition Date

  2. Capitalized terms not defined in this Declaration have their meanings as ascribed in the Emergency Motions.

**Background**

  3. The Debtor is headquartered in Kent, Washington, and is in the business of providing nationwide portable, containerized storage services (often referred to as pods) in approximately 50 locations across the United States to approximately 8,200 customers and has 56 employees.

  4. While the Debtor has historically provided moving services as well, it recently took steps to discontinue its moving services due to uncontrollable tariff increases that rendered that segment of its business no longer viable.

  5. With respect to its storage operations, the Debtor provides customer storage through three different segments: 1) storage in leased facilities, 2) storage at co-locations, and 3) storage through relationships with branch affiliates.

  6. In each case, the Debtor receives payment directly from the customer on a monthly basis, almost exclusively through credit card payments, and typically has a written contract with customers. Depending on when the customer first began doing business with the Debtor, the form of contract can vary somewhat. Customers, on average, maintain storage with the Debtor for approximately one year. Both the Debtor and the customer generally have a right to terminate the

DECLARATION OF TRACEY F. KELLY IN SUPPORT OF
DEBTOR'S EMERGENCY FIRST DAY MOTIONS – Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2237 20161 aj19590381

Case 16-15618-CMA Doc 5 Filed 11/07/16 Ent. 11/07/16 13:51:29 Pg. 2 of 6

storage agreement on 30 days notice. The Debtor regularly adds customers, which has continued at a normalized, if not above average, rate over the last months. Following is a summary of each of the three segments of the Debtor's storage business.

7. With respect to the leased storage facilities, the Debtor leases over 400,000 square feet of space across its 9 leased facilities and stores customers' containers in those leased facilities.

8. The vast majority (more than 6,600) of the Debtor's customers' storage is placed in the Leased Facility Storage. These leased facilities are located in Seattle, Austin, Boston, Chicago, Los Angeles North, Los Angeles Metro, San Diego, San Francisco, and Washington D.C.

9. In addition, the Debtor operates out of 10 co-locations under a Master Services Agreement with Graebel Companies, Inc., paying Graebel for storage space on a per square foot basis with additional "per touch" service fees. The Co-Location Storage houses the containers of approximately 1,400 of the Debtor's customers.

10. Finally, the Debtor maintains storage capability through relationships with approximately 30 active affiliate-operated locations nationwide. In these locations, a third-party affiliate owns and maintains space in which the Debtor contracts to store customer containers and some of its empty containers. At this time, the Debtor stores the goods of approximately 150 customers in the Branch Affiliate Storage locations.

11. Approximately 27 of the Debtor's 56 employees are located in its Kent headquarters and call center, with the balance of employees at the Debtor's locations across the United States.

12. Over the last two years, the Debtor encountered two issues which negatively affected its financial performance. During 2015, it encountered a shortage of available containers necessary to meet demand, which depressed its revenues without the ability to commensurately reduce expenses. Then, in early 2016, the pricing for moving containers containing household goods increased

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

dramatically. Historically, the Debtor's moving costs were governed by Tariff 100 pricing. However, during 2016, pricing increased by 50% to Tariff 150, which applied solely to the moving of containers storing household goods. Ultimately, these two factors have created financial stress on the company, necessitating this filing.

13. Prior to filing this case, the Debtor engaged the investment banking firm of Raymond James Financial, Inc. to market the company for sale to determine if there might be productive solutions through that path. Through that process, seven interested parties, including direct competitors, executed Nondisclosure Agreements and received significant confidential information from the Debtor about its business. Ultimately, no parties were interested in pursuing an acquisition. As a result, the Debtor determined that the restructure efforts described above offer the best path to maximize value.

14. In the weeks leading up to the Petition Date, beginning on October 7, 2016, the Debtor began cost cutting measures, including the layoff of 34 of its 90 employees, leaving 56 employees in place as of the Petition date. For the most part, these efforts revolved around the winding down of the Debtor's moving business, as well as an effort to reduce expenses where possible.

15. The Debtor filed this case in order to avail itself to the stability and breathing room in a Chapter 11 to perform a measured analysis of the viability and profitability of each Leased Facility Storage location and each Co-Location Storage location. The Debtor has approximately 12,000 storage containers rented by approximately 6,674 customers at its Leased Facility Storage locations; and approximately 2,577 storage containers rented by approximately 1,436 customers at its Co-Location Storage location. Upon determination that any Leased Facility Storage location or Co-Location Storage location is not a sustainable component of the Debtor's operations, the Debtor will work to find a buyer of such location and its assets. As to its Branch Affiliate Storage arrangements,

DECLARATION OF TRACEY F. KELLY IN SUPPORT OF
DEBTOR'S EMERGENCY FIRST DAY MOTIONS – Page 4

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2237 20161 aj19590381
Case 16-15618-CMA    Doc 5    Filed 11/07/16    Ent. 11/07/16 13:51:29    Pg. 4 of 6

because the affiliate customers are relatively few in number (approximately 150 of the over 8,000 customers), the Debtor will work to quickly arrange assignment of such contracts and related customers.

16. Ultimately, the Debtor plans to immediately begin its operational restructuring efforts, and expects those efforts to take the first few months of the case. As those operational restructuring efforts are closer to completion, the Debtor anticipates proposing a Plan of Reorganization constructed around its core business. Many of the components of a Plan will depend on some of the results of the first phase of restructuring, though the Debtor's goal is to ultimately exit this Chapter 11 with its business intact, albeit resized.

17. As of the Petition Date, the Debtor owes JP Morgan Chase approximately $4 million secured by a first position security interest in the Debtor's assets pursuant to a January 7, 2014 Credit Agreement, as amended, a January 7, 2014 Line of Credit Note, as amended, a January 7, 2014 Continuing Security Agreement as amended, and March 14, 2014 UCC1 filed with the Washington State Department of Licensing, No. 2014-073-9866-4. Attached hereto as Exhibit A are copies of the Debtor's loan documents. The loan has not matured and is not in default. All scheduled payments have been made when due.

**Case Management Motion**

18. Given the over 500 creditors and parties-in-interest in this case, the cost of copying and mailing every notice in these cases to all parties on the mailing matrix will create a significant administrative expense. As detailed therein, the Case Management Motion seeks to establish noticing procedures to manage these costs from the beginning. It is essential that the relief requested in the Case Management Motion be granted on an emergency basis in order to immediately curb tremendous administrative costs to this estate.

DECLARATION OF TRACEY F. KELLY IN SUPPORT OF
DEBTOR'S EMERGENCY FIRST DAY MOTIONS – Page 5

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2237 20161 aj19590381
Case 16-15618-CMA    Doc 5    Filed 11/07/16    Ent. 11/07/16 13:51:29    Pg. 5 of 6

**Noticing Agent Application**

19. As with the relief sought in the Case Management Motion, given the number of parties in interest in this case, immediate employment and retention of a claims and noticing agent is in the best interests of the estate and its creditors, because claims and noticing services will be administered with expertise and efficiency, thereby saving the estate from expenditure of substantial administrative resources and costs.

20. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 7th day of November, 2016.

/s/ Tracey F. Kelly
Tracey F. Kelly

DECLARATION OF TRACEY F. KELLY IN SUPPORT OF
DEBTOR'S EMERGENCY FIRST DAY MOTIONS – Page 6

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2237 20161 aj19590381
Case 16-15618-CMA    Doc 5    Filed 11/07/16    Ent. 11/07/16 13:51:29    Pg. 6 of 6